Michael D. BROWN and Cleata Brown, his wife, Appellants,

v.

E. DeVICCHIS & SONS, INC., a corporation.

No. 76–1696.

United States Court of Appeals, Third Circuit.

Argued Jan. 14, 1977.

Decided March 14, 1977.

---

John Daley, Samuel W. Braver, Brennan, Robins & Daley, Pittsburgh, Pa., for appellants.

Mark K. McNally, Brandt, McManus, Brandt & Malone, Pittsburgh, Pa., for appellee.

## OPINION OF THE COURT

Before GIBBONS and GARTH, Circuit Judges, and BECHTLE,* District Judge.

* Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Paragraph 8 of the complaint alleged:
    The damages incurred by the plaintiffs was a direct and proximate result of the negligence, recklessness and wantonness of defendant itself and through its agents, servants and employes while acting within the scope of their employment generally and in the following particulars:
    (a) In its employe John Frye operating said truck at an excessive rate of speed;
    (b) In its employe John Frye failing to have said truck under proper control;
    (c) In its employe John Frye operating said truck at a speed too fast for the existing conditions;
    (d) In its employe John Frye operating said truck when he knew or should have known of the defective condition of same;
    (e) In its employe John Frye failing to take proper precautions in descending the steep grate [sic] known as Tussey Mountain;

GIBBONS, Circuit Judge.

The plaintiffs, Michael D. Brown and Cleata Brown, appeal from the denial of a motion for a new trial in a diversity personal injury action in which the jury found for the defendant on liability. Because rulings of the trial court precluded the Browns from presenting their theories of negligence as a part of the plaintiffs' case, we reverse.

The accident giving rise to the suit occurred on August 16, 1972 when Brown's car, proceeding north on Pennsylvania Route 26, was struck by a truck owned by the defendant E. DeVicchis & Sons, Inc. and driven by DeVicchis' employee John Frye. The impact occurred at the intersection of Route 26 and Route 164, when the brakes of the truck failed as it was descending the steep grade in Route 164 toward Route 26. The complaint alleged thirteen theories of negligence [1] of which the first eight referred to the manner in which the driver, Frye, operated the truck. In a pretrial order the court directed that the issue of liability be tried to the jury prior to the issue of damages. The same pretrial order directed the parties to file a pretrial stipulation, and they did so. In the pretrial stipulation the plaintiff reserved twelve issues of fact bearing on liability to be litigated on

(f) In its employe John Frye operating said truck in a reckless fashion;
(g) In its employe John Frye causing said truck to enter the intersection and cross into the lane of traffic designated for husband plaintiff and which lane husband plaintiff occupied at the time of the impact;
(h) In defendant employe John Frye failing to keep his truck in its lane of traffic;
(i) In failing to properly inspect said truck;
(j) In failing to have said truck in proper mechanical repair and condition;
(k) In permitting its employe John Frye to operate said truck when defendant knew or should have known of the defective and dangerous condition of same;
(*l*) In violating the laws of the Commonwealth of Pennsylvania; and
(m) Otherwise, in failing to exercise due care.
App. at 6a–7a.

the trial.[2] Shortly before the trial was to start a further conference was held in chambers, at which the already detailed stipulation entered into between counsel was elaborated to include the stipulation:

> The collision occurred after the defendant's truck entered into the said Route 26 at a rate of speed in excess of the posted speed limit and crossed over the center line on Route 26, entering into the plaintiff's proper lane of travel, in which lane this collision occurred. (Tr. p. 18).

Under Pennsylvania law this stipulation established a prima facie case of negligent operation. However, it was understood that the defendant would offer proof that the stipulated facts were the unavoidable result of a sudden emergency with which driver Frye was confronted when the brakes failed on the steep incline in Route 164.

Following the stipulation the district court ruled:

> The Court: We are holding as a matter of law from what the defendant admitted that the position of the vehicles afterwards and the fact that the truck was going beyond the speed limit, and was in an improper position on the road, estab-

2. Part IV of the stipulation provided, in pertinent part:

IV. The following issues of fact remain to be litigated upon the trial.

1. Whether the defendant was negligent in entrusting the operation of said truck to its employee, John Frye, who plaintiffs will contend was inexperienced in the operation of said truck and, in particular, permitting the said John Fry [sic] to operate said truck on Pennsylvania Route 164 without experience.

2. Whether the defendant properly inspected, tested, maintained and repaired the said truck operated by its employee, John Frye, involved in the accident and, in particular, the braking system and drive shaft and component parts thereof.

3. Whether the defendant, through its officers and employees, permitted John Frye, its employee, to operate said truck loaded with concrete blocks on the date of the accident with the knowledge, or at least with information from which they should have known that the braking system and the drive shaft and component parts thereof were in a defective, dangerous and poorly maintained condition.

4. Whether the defendant's employee, John Frye, properly operated said truck prior to and while descending the said Pennsylvania Route 164.

5. Whether the defendant's employee, John Frye, properly operated said truck prior to and while descending the said Pennsylvania Route 164.

6. Whether the defendant's employee, John Frye, undertook measures to avoid his loss of control of said truck and whether he took any proper measures available to him to avoid entering the previously described intersection of Pennsylvania Route 164 and 28 without having proper control of said truck.

7. Whether the defendant's employee, John Frye, gave any reasonable warnings available to him to other traffic approaching the said intersection knowing that he did not have any control at that time of said truck and was traveling at an excessive rate of speed.

8. Whether defendant's employee, John Frye, did cause the said truck to enter the previously described intersection at a speed of 120 to 130 miles per hour, and without exercising proper control of the said truck thereby resulting in said truck colliding with the automobile operated by husband plaintiff.

9. Whether defendant's employee, John Frye, operated the said truck improperly, at an excessive rate of speed, at a speed too fast for conditions; whether he failed to yield the right-of-way to the husband plaintiff, and whether he and his employer violated the laws of the Commonwealth of Pennsylvania, the regulations thereof and local ordinances and whether he and his employer violated the laws of the United States and its regulations.

10. Plaintiffs will claim the personal injuries and damages flowing therefrom as set forth in detail in the plaintiffs' Pretrial Narrative Statement.

11. Whether the collision between the defendant's vehicle and the vehicle operated by Michael D. Brown resulted from a mechanical failure of the defendant's truck, which failure was not foreseen by the defendant or its employee, John Frye, and could not reasonably have been foreseen by the defendant or its employee, John Frye.

12. Whether the defendant's employee, John Frye, was confronted with a sudden emergency not of his own making and, if so, whether he responded to that emergency in the same manner as would a reasonable man confronted with the same emergency circumstances.

13. Whether the plaintiff, Michael D. Brown, knew, or should have know, [sic] of the imminence of a collision and, if so, whether he failed to take appropriate measures to avoid the collision.

App. at 111a–112a. (Paragraph 4 omitted in original).

lishes negligence unless it is rebutted, and I'm not going to allow proof of it.

App. at 121a.

The plaintiffs' attorney excepted to the ruling, arguing:

I understand why you did it, and I'm saying I except to the fact that I am limited in showing the jury or portraying to the jury how this accident took place.

*Id.*

Despite extended argument the court reiterated its ruling that no evidence of negligence beyond the stipulated fact would be admitted in plaintiffs' case. Instead, the court ruled, the plaintiffs could offer rebuttal testimony if the defendant offered proof that the driver was confronted with a sudden emergency. Plaintiffs' counsel preserved his exception to the ruling throughout.

During plaintiffs' opening argument when counsel attempted to describe how the accident occurred the court cut him short, ruling:

The Court: Counsel, I hate to do this, but all of these things are immaterial because so far the stipulation has established negligent operation of the automobile, and we go on from there.

App. at 126a.

Objecting, plaintiffs' counsel yielded.

The effect of the court's ruling was to prevent plaintiffs from presenting in their case the theory that Frye, even assuming he was confronted with a sudden emergency,[3] responded to that emergency negligently by careening down the steep incline into Route 26, in a 10 year old truck laden with concrete blocks, and by attempting to negotiate a ninety degree turn into that highway at 100 miles an hour, instead of taking alternative evasive action. The ruling prevented the plaintiffs from calling Frye in their case and examining him as a hostile witness on his conduct during the entire trip down the mountain. It prevented plaintiffs from getting into evidence photo-

graphs showing the path followed by the truck prior to impact. It also prevented the introduction into evidence of photographs of the condition of the truck after impact, offered for the purpose of showing that the attempted ninety degree maneuver was negligent.

In ruling on the plaintiffs' motion for a new trial the district court reasoned:

It is to be noted that the plaintiffs were at no time barred from the introduction of admissible evidence but rather enjoyed the very substantial advantage of being able to present most of its evidence in rebuttal. Plaintiffs' counsel rested his case in chief after his opening statement, relying on his opportunity to develop evidence by cross-examination of defendant's witnesses and the offering of rebuttal testimony to refute the defendant's burden of proving itself free of negligence under the circumstances. An example of this advantage is shown by plaintiff's request to call the defendant's driver as on cross-examination in its case in chief. On defendant's objection to this offer the plaintiff refrained from calling the driver on cross-examination and had a full opportunity for cross-examination when the defendant presented this evidence.

App. at 155a–156a.

Plaintiffs' attorney was deprived of the opportunity to outline his case in his opening statement. He was deprived of the opportunity to present evidence on his theories of negligence organized in his own way in his own part of the case. Instead he was placed in the position of having to defend against the defendant's proof of sudden emergency. With deference, we do not agree that these dubious "advantages," to which plaintiffs at all times objected, should have been thrust upon them.

The district court also reasoned that "[a]ll the evidence which plaintiff might have sought to introduce was properly rebuttal material." Certainly it was not. The com-

---

**3.** *See Cavallaro v. Williams*, 530 F.2d 473 (3d Cir. 1975) (emergency doctrine under Maryland law); *Hartman v. Gieraltowski*, 198 Pa.Super. 316, 181 A.2d 688 (1962) (emergency doctrine under Pennsylvania law).

plaint, the pretrial stipulation, and counsel's argument all made the point that plaintiffs wanted to present proof of Frye's unreasonable response to the emergency situation in which he found himself. The evidence supporting that theory was properly a part of the plaintiffs' case in chief.

The defendant DeVicchis defends the court's ruling on the ground that there was a bifurcation as to liability and damages. Some of the proffered evidence, it is urged, would have tended to show the severity of the accident, and the severity of the accident was a matter for the damages part of the trial. The record suggests that the strategy of making the crucial stipulation and urging the court to rule as it did was designed to keep out of the liability phase of the case evidence which might have suggested such severity. But if the condition of the vehicles, for example, bears upon the liability issues, such evidence is admissible in the liability phase of the case. The strategy of successfully excluding it in this instance backfired.

The judgment of the district court will be reversed and the case remanded for a new trial.