### Bruce TAYLOR, Appellant,

### v.

### Jeff HYNSON, Mark Edward Walker, Chad Miller, Defendants,

### and

### McDonald's Corporation, Appellee.

### No. 73232.

### Supreme Court of Oklahoma.

### July 6, 1993.

---

4. Senate Bill 725 is located at Okla.Sess.Laws 1992, Ch. 337, 1620–1632.

James F. Howell, and Allen B. Massie, Midwest City, for appellant.

McKinney, Stringer & Webster by George D. Davis, Oklahoma City, for appellee.

HODGES, Chief Justice.

The issue in this case is whether as a matter of law a business has a duty to warn or protect a customer from criminal acts of a third party when the business knows or has reason to know that the

criminal acts are occurring or about to occur on its premises. We answer affirmatively.

## I.

The plaintiff, Bruce Taylor (Taylor), filed a petition against three individuals (individual defendants) and McDonald's Corporation (McDonalds) alleging intentional infliction of emotional distress, gross negligence, and assault and battery. Taylor asked for actual and punitive damages. Subsequently, Taylor dropped the theories of intentional infliction of emotional distress and assault and battery and dismissed the individual defendants.

McDonalds filed a motion for summary judgment which the trial court sustained. The Court of Appeals affirmed. This Court granted certiorari.

## II.

In its motion for summary judgment, McDonalds submitted the following statement of Taylor's allegations. On January 22, 1988, Taylor, a black man, drove onto the McDonalds' premises located at May and Hefner intending to purchase food at the drive-through window. As he was driving to the window, the individual defendants yelled racial slurs at him and his white companion.

When Taylor noticed the individual defendants behind his car, he got out of the car to try to control the situation. Within 30 seconds, Taylor was attacked. The attack lasted about three to five minutes.

Based on these allegations, McDonalds asserts: (1) Taylor's injuries were caused by the criminal assault of the individual defendants; (2) the assault began within ten seconds from the initial encounter; and (3) the assault lasted between three and five minutes. McDonalds argues that, because it does not have a duty to protect its customers from criminal acts of third parties and that Taylor's injuries were caused from such acts, it is entitled to judgment as a matter of law.

Taylor counters with the following allegations which he supports with evidentiary materials as required by Rule 13(b). Before the assault, the individual defendants entered McDonalds wearing spiked rings. They began harassing and threatening patrons by using profanity and by name calling.

Mary Tyson, the manager of McDonalds, admitted that she became concerned when the individual defendants began the name calling inside the building. At that time, she asked them to leave. However, she did not check to see if they had left the premises because she was busy assisting with service.

One witness, Regina Connor, was outside when Taylor stopped his car. She heard "some guys yelling black and white don't mix and white supremacy, white power, etc." She saw Taylor get out of his car and the fight start. Taylor heard them say "nigger".

Barbara Thompson, a witness, arrived at McDonalds and noticed a problem between some Skinheads and Taylor. Thompson asked Tyson to call the police. Tyson was watching the incident and replied, "Well we'll just hold on." Tyson refused to call the police.

Thompson stated that approximately four minutes elapsed between the time that she noticed there was a problem and the time the fight began, approximately nine minutes elapsed between the time that the individual defendants left the McDonald's building and the fight ended, approximately one-half to one minute elapsed between the time that she told the manager to call the police and the time that the fight began, and approximately four minutes elapsed between the time the fight ended and the police arrived.

The investigating officer stated that he arrived at McDonald's approximately one minute after receiving the call. When the officer arrived he noticed Taylor's clothes were torn and soiled. He also noted that Taylor had a disheveled appearance and was shaken up.

In his Petition filed in the district court, Taylor alleged that the individual defendants attacked him by hitting, kicking,

striking, and cutting him with a spiked ring, brass knuckles, and their fists. He also alleged that the individual defendants cursed him and threw beer cans at him and his girlfriend. Taylor claimed that Mc-Donalds was negligent because it did nothing to expel the individual defendants from its premises when it knew of their propensity for violence.

The trial court sustained McDonalds' motion for summary judgment finding that McDonalds did not have a "duty to provide 'adequate security' against intervening criminal attacks which might occur on [its] property" and that McDonalds "did not have notice of the attack so as to have had adequate time to call for police assistance prior to the attack." Taylor appealed, and the Court of Appeals affirmed finding a merchant has no duty to provide invitees protection from criminal acts of third parties.

### III.

■ Rule 13 of the Rules for District Courts of Oklahoma, Okla.Stat. tit. 12, ch. 2, app. 1, rule 13 (1991), provides that a trial court shall grant summary judgment when there is no dispute of material facts and when one party is entitled to judgment as a matter of law. However, where there are issues unresolved, summary judgment is improper. *Id.* In the present case, neither party demonstrated that there was sufficient grounds for granting summary judgment. Therefore, the order granting summary judgment was improper.

### IV.

■ It is well established that a person who goes on land to conduct business is a business invitee for the purposes of establishing liability. *See Rogers v. Hennessee*, 602 P.2d 1033 (Okla.1979); *Davis v. Allied Supermarkets, Inc.*, 547 P.2d 963 (Okla.1976). An invitor has a duty to exercise reasonable care to prevent injury to a business invitee. *St. Louis–San Francisco Ry. Co. v. Gilbert*, 185 Okl. 591, 95 P.2d 123 (1939). However, an invitor is not an insurer of the safety of others and is not required to prevent all injury occurring on the property. *Id.*, 95 P.2d at 125–26. "An invitor cannot be held responsible unless it be shown that he/she had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to give warning of its presence." *Rogers*, 602 P.2d at 1035.

■ An invitor does not have a duty to protect invitees from criminal assaults by third persons, *see Davis v. Allied Supermarkets, Inc.*, 547 P.2d 963 (Okla.1976) (disapproved in the landlord-tenant context), unless the invitor knows or has reason to know "that the acts of the third person are occurring, or are about to occur." Restatement (Second) of Torts § 344 cmt. f (1965); *id.* at § 302A cmt. e, illus. 4. Further, a possessor of land " 'is not required, at his peril, to keep the premises absolutely safe....' " *St. Louis–San Francisco Ry.*, 95 P.2d at 125 (quoting 45 C.J. 826, § 237). When an invitor has knowledge that an invitee is in imminent danger, the invitor must act reasonably to prevent injury.

### V.

■ In the present case, there is a factual dispute whether McDonald's employee Tyson knew that the assault was occurring or was about to occur. There is also a dispute whether, if she had such knowledge, she acted reasonably under the circumstances.

### VI.

■ McDonalds relies on *Davis v. Allied Supermarkets, Inc.*, 547 P.2d at 963, and *McMillin v. Barton–Robison Convoy Co.*, 182 Okl. 553, 78 P.2d 789 (Okla.1938), for the proposition that "[u]nder Oklahoma law, a merchant is under no duty to protect customers against independent criminal acts of third parties." In both these cases, this Court stated that an employer does not have a general duty to protect against criminal acts of third parties. However, we recognized an exception that unique circumstances can give rise to such a duty. *Davis*, 547 P.2d at 964; *McMillin*, 78 P.2d at 790. Taylor's alleged facts, if taken as

**282**

true, are sufficient to come within this exception.

Taylor argues that *Lay v. Dworman,* 732 P.2d 455 (Okla.1986), overruled *Davis* and *McMillin. Lay* states:

> To the extent that the cases of *McMillin v. Barton–Robison Convoy Co.,* 182 Okla. 553, 78 P.2d 789 (1983) [1938]; *Davis v. Allied Supermarkets, Inc.,* 547 P.2d 963 (Okla.1976); and *Horst v. Sirloin Stockade, Inc.,* 666 P.2d 1285 (Okla.1983), express views inconsistent with our finding of a duty on the part of the landlord in this case, those cases are expressly disapproved.

*Lay,* 732 P.2d at 460. This statement did not overrule *Davis* and *McMillin* but only made clear that the rule that landlords have no duty to protect tenants from criminal acts of third parties is not absolute and that there are exceptional circumstances under which a landlord may be held liable. A distinction which is consistent with our holding in the present case.

### VII.

Because rule 13 of the Rules for District Courts precludes summary judgment where a dispute of material facts exist and because questions of fact are for the jury, *see* Okla.Stat. tit. 12, § 556 (1991), we find that the trial court erroneously granted McDonalds' motion for summary judgment. The trial court is reversed and the cause remanded. The opinion of the Court of Appeals is vacated.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; JUDGMENT OF TRIAL COURT REVERSED; CAUSE REMANDED.

SIMMS, ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

LAVENDER, V.C.J., and OPALA, J., concur in part, dissent in part.

HARGRAVE, J., dissents.