FILED
United States Court of Appeals
Tenth Circuit

June 3, 2021

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DILLION ALLEN BURGE, an individual;
KATHY LYNN BURGE, an individual
and parent of Dillion Allen Burge,

     Plaintiffs - Appellants,

v.

WAL-MART STORES EAST, LP, a
Delaware limited partnership, d/b/a
Walmart Supercenter,

     Defendant - Appellee.

No. 20-6013
(D.C. No. 5:19-CV-00225-HE)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

Walmart employee Patricia Harjo and her husband, Roy Harjo, argued and fought

outside a Walmart store in Shawnee, Oklahoma.  Dillion Burge intervened to protect Mrs.

Harjo from Mr. Harjo.  Mr. Harjo stabbed Mr. Burge twice.  Mr. Burge and Kathy Burge,

his mother, sued Walmart for negligence in Oklahoma state court.  Walmart removed the

case to federal district court based on diversity jurisdiction.  The court granted summary

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment for Walmart.  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

## I.  BACKGROUND

### A. *Factual Background*

Mrs. Harjo worked at a Walmart store in Shawnee, Oklahoma.  During a break, she called her husband and asked him to pick her up.  After clocking out, she waited outside for him near the store entrance.

Mr. Harjo was running late, so Mrs. Harjo called him again.  She could tell from his speech that he had been drinking.  She knew he had been convicted of violent assaults, including an assault with a machete and an assault on a police officer.  She knew he had a drinking problem.  And she knew he tended to become violent if provoked while drinking.  Even though Mrs. Harjo could tell that Mr. Harjo had been drinking, she asked him to pick her up anyway.  She did not know he had a knife.

When Mr. Harjo arrived, he pulled in front of the store entrance.  Mrs. Harjo noticed new damage to the car.  She started to argue with him.  Walmart employees outside the store overheard and watched, including mid-level manager Jayson Overley.  They could tell Mr. Harjo was drunk.  Mr. Overley approached the Harjos as they argued.

Mrs. Harjo pushed Mr. Harjo to the ground.  Meanwhile, seventeen-year old Mr. Burge and three of his friends arrived.  Mr. Burge, who did not know the Harjos, saw Mr. Harjo hit Mrs. Harjo.  Mr. Burge decided to defend her and approached the Harjos.  Mrs. Harjo told Mr. Burge and his friends to walk away and leave her and her husband alone.  Walmart contends Mr. Overley also told Mr. Burge multiple times to leave the scene.

2

Mr. Burge nonetheless confronted Mr. Harjo and told him not to hit Mrs. Harjo and to leave her alone. Mr. Harjo pulled a knife. He first turned toward Mr. Overley but then started swinging the knife at others. He stabbed Mr. Burge twice. Mr. Burge started to run away but collapsed. One of his friends called 911.

Mr. Burge introduced evidence that law enforcement and emergency medical services responded to his friend's call. Walmart introduced no evidence showing that any of its employees called 911 either during the initial altercation between the Harjos or after Mr. Burge intervened. Mr. Burge was taken to the hospital and survived.

These events unfolded quickly:

- Mr. Harjo arrived at Walmart about four minutes, thirty-six seconds before Mr. Burge confronted him.

- Mr. Harjo stabbed Mr. Burge about forty seconds later.

- Mr. Burge's friend called 911 about two minutes, twenty-five seconds after the stabbing.

- Police detained Mr. Harjo just over three minutes after the 911 call.

B. *Procedural History*

After reaching adult age, Mr. Burge sued Walmart for negligence in state court. Walmart removed the action to federal district court. Mr. Burge's first amended complaint added Ms. Burge as a plaintiff because she was responsible for Mr. Burge's medical bills from the stabbing.

After discovery concluded, the court granted summary judgment to Walmart. It held an invitor like Walmart generally has no duty under Oklahoma law to protect invitees like Mr. Burge from criminal assaults by third parties like Mr. Harjo. The court

3

recognized an exception to this rule when "the invitor knows or has reason to know that the acts of the third person are occurring, or are about to occur." *See* App. at 197 (quoting *Taylor v. Hynson*, 856 P.2d 278, 281 (Okla. 1993)). But it held the exception did not apply because "Walmart had [no] reason to know that a stabbing was about to occur." *Id.* Although "Walmart's employees knew Mr. Harjo was intoxicated," Walmart did not "kn[o]w or ha[ve] reason to know that Mr. Harjo had a knife or was going to stab Mr. Burge with it." *Id.*

After the district court entered final judgment, the Burges timely appealed. This court requested supplemental briefing on whether knowledge that employees gain outside the course and scope of their employment can be imputed to their employers.

### C. *Legal Standards*

We explain how we ascertain Oklahoma law and then describe Oklahoma law on an invitor's duty to protect invitees from criminal assaults by third parties.

### 1. **Ascertaining Oklahoma Law**

"Federal courts exercising diversity jurisdiction apply the substantive law of the forum state." *Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765-66 (10th Cir. 2021) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624 (10th Cir. 2018)). "When ascertaining [Oklahoma] law, we look first to the most recent decisions of the state's highest court." *Id.* at 766 (quotations omitted). "If no controlling decision exists, we must attempt to predict how the highest court would interpret the issue." *Id.* (quotations omitted). Our prediction may consider "decisions rendered by lower courts in [Oklahoma], appellate decisions in

4

other states with similar legal principles, district court decisions interpreting the law of [Oklahoma], and the general weight and trend of authority." *Wade v. EMASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (citations and quotations omitted). "We do not defer to the district court's interpretation of [Oklahoma] law." *See Sinclair Wyo. Refin. Co.*, 989 F.3d at 766.

2. **Oklahoma Law**

To establish negligence under Oklahoma law, a plaintiff must prove "(a) a duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty, and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care." *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla. 1982). This appeal turns on the first element—duty.

As to whether an invitor owes a duty to protect invitees from criminal assaults by third parties, Oklahoma follows Comment f to Section 344 of the *Restatement (Second) of Torts*, which reads in relevant part, "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur." *See Bray v. St. John Health Sys., Inc.*, 187 P.3d 721, 723-24 & n.2 (Okla. 2008) (adopting Comment f in its entirety). We have called this the "'unique' or 'exceptional' circumstances" exception. *Spencer v. Wal-Mart Stores, Inc.*, 203 F. App'x 193, 197 (10th Cir. 2006) (unpublished) (quoting *Taylor*, 856 P.2d at 281-82).

5

## D. *Standard of Review*

"We review the grant of summary judgment by the district court de novo, applying the same legal standard to the evidence in the record as did the district court. In doing so, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co.*, 989 F.3d at 765 (citation, quotations, and alteration omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II. **DISCUSSION**

The district court erred when analyzing whether Walmart owed a duty to Mr. Burge. It framed the question too narrowly when it asked whether Walmart could foresee a stabbing by Mr. Harjo. It should have asked whether an assault by Mr. Harjo was foreseeable. Walmart urges us to affirm on the ground that it could not have expected Mr. Harjo would assault an invitee. We remand for the district court to address that issue.

## A. *Duty and Scope of Foreseeability*

In deciding whether Walmart owed a duty to Mr. Burge based on the "unique or exceptional circumstances" exception, the district court asked whether Walmart knew or should have known that Mr. Harjo would stab an invitee. The court thus required

6

specificity about the type of crime that must have been foreseeable to Walmart. The

Burges argue this conception of foreseeability is too narrow.[1] We agree.

Oklahoma law supports the Burges' view. In *Taylor v. Hynson*, 856 P.2d 278,

280-81 (Okla. 1993), the plaintiff sued a McDonalds restaurant operator and McDonalds

after three individuals on the property "hit[], kick[ed], str[uck], and cut[] him with a

spiked ring, brass knuckles, and their fists." Addressing foreseeability, the Oklahoma

Supreme Court asked whether the defendant's employees "knew that [an] assault was

occurring or was about to occur." *Id.* at 281. The court did not limit its focus to how the

victim was assaulted or what weapons the third parties used.

In *Bray v. St. John Health System, Inc.*, the Oklahoma Supreme Court addressed

the duty of an invitor who "know[s] or ha[s] reason to know, from past experience, that

there is a likelihood of conduct on the part of third persons in general which is likely to

endanger the safety of the visitor, even though he has no reason to expect it on the part of

any particular individual." 187 P.3d 721, 724 (Okla. 2008) (quoting *Restatement*

*(Second) of Torts* § 344 cmt. f). The plaintiff sued a hospital after she was "kidnapped at

knife point" in its parking garage, taken to another location, and raped. *Id.* at 723.

During the previous year, several crimes, "includ[ing] assault, battery, abduction, robbery

---

[1] At oral argument, Walmart's counsel attempted to dismiss this argument by saying the district court merely described what had happened to Mr. Burge. Oral Arg. at 27:02-28:40. But the district court asked whether "Walmart had reason to know that a *stabbing* was about to occur," and it said there was no evidence that "Walmart knew or had reason to know that Mr. Harjo had a *knife* or was going to *stab* Mr. Burge with it." App. at 197 (emphasis added).

by force, and/or armed robbery," had occurred in the hospital's parking lots and garages. *Id.* at 725. Instead of narrowly framing the foreseeability requirement, the Oklahoma Supreme Court held that "the place and character of [the hospital's] parking garage and [the hospital's] past experience with a high rate of crime on its property gave rise to a duty to provide adequate precautions against criminal activity in its parking garage." *Id.*

In *Edington v. A & P Enterprises, Inc.*, 900 P.2d 453, 454 (Okla. Civ. App. 1994), the plaintiff sued a restaurant after a loiterer attempted to snatch her purse and assaulted her. A restaurant employee stated that she and her co-workers had noticed the loiterer before the assault. *Id.* They had worried he was "contemplating some crime," and they had watched their vehicles to ensure he did not break into them. *Id.* Although the restaurant employees had no reason to anticipate specifically that the loiterer would try to snatch the victim's purse and assault her, the Oklahoma Court of Civil Appeals held that their observations created a genuine issue of material fact as to foreseeability. *Id.* at 455.

These decisions are consistent with the Oklahoma negligence principle that "[g]enerally a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty.*, 60 P.3d 497, 502 (Okla. 2002) (quotations omitted). After all, "[f]oreseeability establishes a zone of risk, which is to say that it forms a basis for assessing whether the conduct creates a *generalized* and foreseeable risk of harming others." *Id.* (quotations omitted) (emphasis added).

The district court therefore erred by addressing only whether a stabbing by Mr. Harjo, as opposed to an assault, was foreseeable to Walmart.

8

## B. *Remand on Foreseeability of Assault*

Walmart proposes affirmance on the alternative ground that it could not have anticipated Mr. Harjo would assault an invitee. The Burges counter that an assault was foreseeable to Walmart. First, they argue Mrs. Harjo's knowledge of Mr. Harjo's violent tendencies when drunk can be imputed to Walmart. Second, they point to the Walmart employees who observed the Harjos' altercation and could tell Mr. Harjo was violent and drunk.

We do not reach this issue. Because Walmart's summary judgment motion and the district court's decision focused on whether a stabbing was foreseeable, *see* App. at 40-41, the parties have not fully briefed or developed the evidentiary record under the correct foreseeability standard. We explain further below.

1. **Mrs. Harjo's Knowledge**

The Oklahoma Supreme Court has held that "knowledge or notice possessed by an agent while acting within the scope of authority is the knowledge of, or notice to the principal." *Tiger v. Verdigris Valley Elec. Coop.*, 410 P.3d 1007, 1012 (Okla. 2016); *accord In re Okla Unif. Jury Instructions – Civ.*, --- P.3d ----, 2020 WL 133173 (Jan. 13, 2020). Oklahoma has recognized an "exception to the general rule to the effect that, 'The knowledge of an agent is not imputed to his principal if the circumstances are such as to raise a presumption that the agent would not communicate such knowledge to the principal.'" *Motors Ins. Corp. v. Freeman*, 304 P.2d 328, 330 (Okla. 1956); *accord N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 601 (Okla. 1999) ("Knowledge of an

9

agent is imputed to the principal absent circumstances raising a clear presumption that the agent will not communicate the knowledge to the principal.").

Although we ordered supplemental briefing on whether an employee's knowledge can be imputed to the employer under Oklahoma law, the parties have not addressed this exception, including whether the Burges or Walmart must prove whether or not the exception applies. And the parties have not sufficiently developed the evidentiary record, including Walmart's expectations for its employees in its formal and informal policies. We are thus unable to determine whether Mrs. Harjo's knowledge of her husband's violent tendencies can be imputed to Walmart.

## 2. Other Walmart Employees' Witnessing the Harjos' Altercation

We likewise do not determine whether Walmart should have foreseen Mr. Harjo's assault on Mr. Burge based on other employees' having witnessed the Harjos' altercation. This inquiry is fact-intensive, and the parties have neither squarely briefed the issue nor provided all the relevant evidence (including the surveillance camera footage that captured these events).

## III. **CONCLUSION**

The district court framed the issue of foreseeability too narrowly by asking

whether Walmart should have foreseen a stabbing by Mr. Harjo, as opposed to an assault.

It therefore legally erred in addressing the duty element of negligence.[2]  We thus reverse

and remand for the district court to apply the correct foreseeability standard.

> Entered for the Court
>
>
> Scott M. Matheson, Jr.
> Circuit Judge

---

[2] Because we reverse and remand on this ground, we do not address the Burges' argument that Walmart had a duty to Mr. Burge as a matter of public policy, an issue the district court did not address.  And because Walmart has not urged us to affirm on the alternative ground that it met any duty to Mr. Burge, we do not consider whether this would be an alternative ground to affirm summary judgment.